## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**COLLEEN B. ANDERSON,**
     **Plaintiff,**

**v.**                           **Case No: 5:09cv282/RS/MD**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
     **Defendant.**

_____

## REPORT AND RECOMMENDATION

     This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Anderson's application for Supplemental Security Income (SSI) benefits under Title XVI of the Act.

     Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are not supported by substantial evidence; thus, the decision of the Commissioner should be reversed and remanded.

## PROCEDURAL HISTORY

     On September 26, 2005, the plaintiff, Colleen Anderson, filed an application for SSI benefits alleging a disability date beginning on March 30, 2001.  The claim

was denied initially and on reconsideration and Ms. Anderson requested a hearing before an Administrative Law Judge (ALJ). A hearing was held on September 10, 2007 at which Ms. Anderson was represented by counsel and testified. A vocational expert also testified. The ALJ entered an unfavorable decision on March 28, 2008 (tr. 22-29) and Ms. Anderson requested review by the Appeals Council and submitted additional evidence. The Appeals Council considered the new evidence but declined review (tr. 7-9). The Commissioner has therefore made a final decision, and the matter is subject to review in this court. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1262 (11th Cir. 2007); *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). This timely appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that Ms. Anderson had not engaged in substantial gainful activities since September 26, 2005 and that she had severe impairments of (1) diabetes mellitus, (2) high blood pressure, (3) diabetic peripheral neuropathy, and (4) neuralpathic pain secondary to peripheral neuropathy. The ALJ also determined that Ms. Anderson's alleged dysthymic disorder was non-severe and that her substance addiction and alcoholism were in remission and therefore non-severe. The ALJ further found that Ms. Anderson did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; that she had the residual functional capacity to lift and/or carry and push/pull 20 pounds occasionally and ten pounds frequently, walk and/or stand for approximately six hours out of an eight hour day, without manipulative, environmental or visual limitations, and therefore had the residual functional capacity for a full range of work at the light level of exertion; that she was capable of performing her past relevant work as a cashier, a short order cook, manager at a fast food restaurant and

receptionist; and that she was not under a disability as defined in the Act since September 26, 2005.

## STANDARD OF REVIEW

In Social Security appeals, this court must review de novo the legal principles upon which the Commissioner's decision is based.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)).  There is no presumption that the Commissioner followed the appropriate legal standards in deciding a claim for benefits, or that the legal conclusions reached were valid.  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).  Failure to either apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.  *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

The court must also determine whether the ALJ's decision is supported by substantial evidence.  *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).  Even if the proof preponderates against the Commissioner's decision, if supported by substantial evidence, it must be affirmed.  *Ingram*, 496 F.3d at 1260;  *Miles*, 84 F.3d at 1400.  Substantial evidence is more than a scintilla but less than a preponderance, and encompasses such relevant evidence as a reasonable person would accept as adequate to support a conclusion.  *Moore*, 405 F.3d at 1211 (citation omitted).  In determining whether substantial evidence exists, the court  must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Secretary's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence.  *Moore*, 405 F.3d at 1211 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233,

1239 (11th Cir.1983); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  Findings of fact of the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Ingram*, 496 F.3d at 1260.

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The social security regulations establish a five-step evaluation process to analyze claims for both SSI and disability insurance benefits.  *See Moore,* 405 F.3d at 1211;  20 C.F.R. § 416.920 (2009) (five-step determination for SSI); 20 C.F.R. § 404.1520 (2009) (five-step determination for DIB).  A finding of disability or no disability at any step renders further evaluation unnecessary.  See 20 C.F.R. § 416.920;  20 C.F.R. § 404.1520.  The steps are:

1.   Is the individual currently engaged in substantial gainful activity?

2.   Does the individual have any severe physical or mental impairment that meets the duration requirement?

3.   Does the individual have any severe impairments that meet or equal those listed in Appendix 1 to subpart P of 20 C.F.R. Part 404 and meet the duration requirement?

4.   Considering the individual's residual functional capacity, can the individual perform past relevant work?

5.   Can the individual perform other work given the individual's residual functional capacity, age, education and work experience?

(*Id*.)

These regulations place a very heavy burden on the claimant to demonstrate both a qualifying impairment or disability and an inability to perform past relevant work. *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir.1985)).  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Allen v. Bowen,* 816 F.2d 600, 601 (11th Cir. 1987).  If the Commissioner carries this burden, claimant must prove that she cannot perform the work suggested by the Commissioner.  *Doughty,* 245 F.3d at 1278 n.2; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

Ms. Anderson has filed multiple applications for SSI benefits prior to the current application.  The ALJ noted that her most recent prior application was dismissed on June 15, 2005.  Therefore, the final determination under that application, which was made on February 12, 2004, remains in effect and under the principle of *res judicata*, evidence prior to February 12, 2004 would not be considered because Ms. Anderson was not disabled as a matter of law as of that date.  In order to establish a background for discussion in this report and recommendation, however, it is helpful to briefly review the medical record prior to the *res judicata* date.

Beginning in January 2002, Ms. Anderson was treated by Mutaz Tabbaa, M.D., for chronic neuropathic pain secondary to peripheral motor and sensory neuropathy of undetermined ideology.  Dr. Tabbaa noted that Ms. Anderson complained of foot pain and a prior nerve conduction study had shown peripheral neuropathy.  There

was mild atrophy in the legs (tr. 293-294). Dr. Tabbaa saw Ms. Anderson one more time prior to the *res judicata* date, that is on September 11, 2002. Her condition was essentially unchanged. He changed her medication and indicated he would see her again in about six months (tr. 290).

From June 2003 through February 2004, Ms. Anderson was seen by Aracelia Bernier, M.D., for pain in her feet due to her peripheral neuropathy (tr. 409-410, 445). On February 2, 2004, Dr. Bernier wrote a letter in which she opined that Ms. Anderson could not work (tr. 192). The court notes that the *res judicata* date was ten days later, on February 12, 2004.

The first medical record after the *res judicata* date is nine months later, on October 11, 2004 when Ms. Anderson saw her family physician, Dr. Jensen, complaining of hot flashes and pain in her feet. It was noted that she was trying to reduce her Neurontin medication and was encouraged to take no more than four Neurontin capsules per day. She was told to return in a month (tr. 437).

Ms. Anderson continued under the care of Dr. Tabbaa and saw him on October 25, 2004, December 28, 2004, April 4, 2005, June 12, 2005, March 27, 2006, October 20, 2006, and March 27, 2007 (tr. 217-218, 285-289, 429). During that time her medications were changed. At the July 2005 visit Dr. Tabbaa noted that Trileptal had decreased her pain effectively. He again noted during the March 2006 visit that the Trileptal was helping and that Ms. Anderson was undergoing training so that she could work. At the March 27, 2007 visit, Dr. Tabbaa noted that Ms. Anderson was out of Trileptal but that she had had no recent flare-ups. On August 1, 2007, Dr. Tabbaa noted that Ms. Anderson had not been doing her exercises although she had a swimming pool available to her and that according to her mother she was not motivated at all and did not do anything during the day. Ms. Anderson admitted that there was no problem getting in the water other than her own lack of interest. Her mother also indicated that Ms. Anderson would not call her attorney, and did not

care about her blood sugar, which had been high. On examination, there was decrease of vibratory and pinprick in the feet but not severely, deep tendon reflexes were normal, and her gait was normal, although but she was not able to walk on her heels. She had multiple trigger points in the upper and lower back. Dr. Tabbaa's assessment was chronic neuropathic pain secondary to peripheral diabetic neuropathy, chronic musculoskeletal pain secondary to fibromyalgia, bilateral sensory hearing loss and chronic depressive and sleep disturbance. Dr. Tabbaa encouraged her to stick with her treatment plan and said he would reassess her in six months (tr. 215-216).

On August 27, 2007, Raymond Matson, M.D., a primary care physician at the local community health center, filled out a Medical Source Statement of Ability to do Work-Related Activities, in which he noted that Ms. Anderson could lift less than ten pounds occasionally and could do no lifting frequently, could stand or walk less than two hours in an eight hour workday, could sit less than six hours in an eight hour workday and had weakness in her lower extremities, among other significant limitations (tr. 193-196).

Ms. Anderson was also seen for two different evaluations at the request of the Office of Disability Determinations. The first, on November 28, 2005 was performed by Robert S. Kline, III, Psy.D., a psychologist. Ms. Anderson was referred for assessment of depression. Ms. Anderson stated that "there is a lot more going on than just depression. I only said that. I have a lot of other stuff going on." (tr. 281) She also indicated that she suffered constant pain from neuropathy that is sometimes so bad she could not wear shoes and indicated that she had severe back pain that precluded her from many forms of physical activity and that she had been that way as long as she could remember. She had never had any mental health treatment other than going to the Life Management Center on two occasions. Her prior history of substance abuse and alcohol abuse was in remission for at least

three years.  She reported three arrests for battery, petit theft and DUI.  She stated that she had worked sporadically in stand up positions such as cashier, day laborer and cook but got fired from all her jobs and that she last worked in 2002 and left that position due to chronic pain.  On examination her mood expression was considered to be within normal limits.  She said she was not in a good mood that day because she had a toothache.  She reported an extensive family history of mental illness and psychiatric treatment.  Her thought expression was generally rational and logical.  There was no loosening of associations, rambling speech or delusional thinking.  Her verbal structure was logical and relevant, her concentration was good without distraction, she was fully oriented but complained of memory loss.  Dr. Kline's diagnosis was alcohol dependence reportedly in remission and dysthymic disorder.  Dr. Kline felt that the seriousness of her symptoms did not appear to meet criteria of a major depressive disorder.  He felt that her mood disturbance would have improved if she had received adequate psychiatric and therapeutic intervention.  Finally, Dr. Kline felt that although Ms. Anderson had a diagnosable mental illness, it was not believed to significantly impair her ability to function in the workplace (tr. 281-283).

On November 29, 2005, Ms. Anderson was examined by Merfat Hassan, M.D.  She gave a history of depression for 28 years, numbness and tingling in her feet for five years, aches and pains all over her body for five years, and low back pain for five years.  Her physical examination was essentially normal.  There was no cyanosis, clubbing, or edema in her extremities.  There were no obvious abnormalities in her arm and leg joints, nor any sign of arthritis, swelling or tenderness.  She had normal grip strength and fine manipulation.  There was no evidence of paraspinal muscle spasm or tenderness, straight leg raising was negative in both legs, both while sitting up and lying down.  She had normal speech and memory, there were no sensory deficits, power and sensation were equal and present normally in both

upper and lower extremities bilaterally. Deep tendon reflexes were normal as was her gait. She was able to walk on her heels without difficulty but could not walk on the tips of her toes. She could sit and rise from a chair and examination table without difficulty. Her cranial nerves were grossly intact, her sensory system was grossly intact, and motor strength was 5/5 in all extremities. Dr. Hassan's impression was (1) depression, (2) numbness and tingling in feet, (3), generalized muscle aches, and (4) low back pain (tr. 276-279).

## DISCUSSION

Ms. Anderson argues that the ALJ erred because he: (1) failed to give appropriate weight to the opinions of her treating physicians, because he did not recognize that one of the physician's office records were in the administrative file, and (2) improperly determined her credibility, and that she was disabled from her onset date. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that Ms. Anderson was not disabled, in light of her physical and mental condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

Ms. Anderson's first ground for relief is based in part on the ALJ's failure to consider the medical records of Dr. Matson. In his opinion the ALJ stated

> A Medical Source Statement of Ability to do Work-Related Activities (Physical) completed by Raymond Matson, M.D., on August 27, 2007, revealed the opinion that the claimant did not retain the residual functional capacity to lift and carry even 10 pounds, stand and/or walk for even 2 hours, or sit even 6 hours during an 8-hour workday. He found that the claimant could never climb, balance, kneel, crouch, crawl or stoop (Exhibit 1F/204-207). Although it was alleged that Dr. Matson was a treating source and primary care physician, it is noted that a thorough review of the evidence fails to reveal any records from him.

(Tr. 27). The ALJ then went on to find that regardless of the lack of records from Dr. Matson, his opinion was not supported by the findings of other physicians and therefore was not entitled to controlling weight. Ms. Anderson has shown, however, and the Commissioner concedes (doc. 19, p. 10), that records from the Community Health Center were in fact Dr. Matson's records (tr. 425-26, 429, 431, 437, 443). Those records cover the period from February 2004 through August 2007, all during the relevant period.

Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). "Good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips,* 357 F.3d at 1241; see also *Lewis*, 125 F.3d at 1440 (citing cases).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987).

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 352 F.3d at 1241. Failure to do so is

reversible error.  *Lewis*, 125 F.3d at 1440 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11ᵗʰ Cir. 1986));[1] *see also Nyberg v. Commissioner of Social Security*, 179 Fed.Appx. 589, 591 (11ᵗʰ Cir. 2006) (Table, text in WESTLAW)(also citing *MacGregor*).

The Commissioner argues that any error in not giving Dr. Matson's opinion greater weight was in effect harmless because, whatever his records might have shown, his opinion was not supported by the opinions and records of other physicians.  The undersigned cannot agree.  The ALJ stated that "[a]fter careful consideration of <u>all</u> the evidence," Ms. Anderson was not disabled.  The ALJ considered "all the evidence," but he did not credit Dr. Matson's opinion because he did not tie his opinion to his records.  By discounting Dr. Matson's opinion because they were not supported by his own records (because there were allegedly no such records) the ALJ committed error, and the undersigned is not willing to accept this error as harmless.  The Commissioner's regulations do not allow evidence to be disregarded or overlooked.  20 C. F. R. 404.1520(a)(3) ("*Evidence considered*.  We will consider all evidence in your case record when we make a determination or decision whether you are disabled.").  Regardless of whether other physicians disagree with a treating physician's opinion, or whether there is other evidence to support the ALJ's finding, the ALJ cannot be said to have *adequately* considered all the evidence if he did not recognize that Dr. Matson's records were in the administrative file.  Reviewing the records outside the context of Dr. Matson's opinion was error.

Moreover, when a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature

---

[1] *MacGregor* further held that "Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." 786 F.2d at 1053.

and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical impairments at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. 404.1527(d). Here the ALJ failed to weigh Dr. Matson's opinion against most if not all of these six factors because he erroneously concluded that Dr. Matson's records were not in evidence. This is reversible error.

The ALJ should be required to reconsider his determination after a careful review of and affording proper weight to Dr. Matson's records, and provide such other administrative procedure as is appropriate.

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be REVERSED pursuant to Sentence Four of 42 U.S.C. § 405(g) and REMANDED to the Commissioner for further consideration consistent with this report and recommendation, and that the clerk be directed to close the file.

At Pensacola, Florida this 18th day of August, 2010.


/s/ *Miles Davis*
MILES DAVIS
UNITED STATES MAGISTRATE JUDGE



### NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).


*Case No: 5:09cv282/RS/MD*